Tommy Goodwin Arkansas Casino Corporation #6 Ranch Valley Road Little Rock, AR 72207
Dear Mr. Goodwin:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 1993), of the following popular name and ballot title for a proposed amendment to the Arkansas Constitution:
 POPULAR NAME AN AMENDMENT TO ESTABLISH A STATE LOTTERY; TO PERMIT CHARITABLE BINGO GAMES AND RAFFLES; TO ALLOW ARKANSAS CASINO CORPORATION TO OWN AND OPERATE SIX CASINO GAMBLING ESTABLISHMENTS ONE EACH IN SEBASTIAN, PULASKI, GARLAND, MILLER, CRITTENDEN AND BOONE COUNTIES; AND TO ESTABLISH THE ARKANSAS EDUCATIONAL TRUST FUND AND THE ARKANSAS GAMING COMMISSION.
 BALLOT TITLE AN AMENDMENT TO THE ARKANSAS CONSTITUTION TO ESTABLISH A STATE-RUN LOTTERY, TO BE REGULATED BY THE ARKANSAS GAMING COMMISSION; PROVIDING THAT CHARITABLE BINGO GAMES AND RAFFLES MAY BE CONDUCTED AND SHALL BE REGULATED BY THE ARKANSAS GAMING COMMISSION; PROVIDING THAT SIX CASINO GAMBLING ESTABLISHMENTS, TO BE OWNED AND OPERATED BY ARKANSAS CASINO CORPORATION, BE ALLOWED TO IMMEDIATELY BEGIN OPERATIONS ONE EACH TO BE LOCATED IN SEBASTIAN, PULASKI, GARLAND, MILLER, CRITTENDEN AND BOONE COUNTIES; PROHIBITING CASINO GAMING IN ANY OTHER COUNTY; PROHIBITING THE SALE OF LOTTERY TICKETS, PARTICIPATION IN BINGO, RAFFLES OR CASINO GAMING TO ANY PERSON UNDER THE AGE OF 21; DEFINING CASINO GAMING AS ANY GAME PLAYED WITH CARDS, DICE, EQUIPMENT OR ANY MECHANICAL, ELECTROMECHANICAL OR ELECTRONIC DEVICE OR MACHINE FOR MONEY, PROPERTY, CHECKS, CREDIT OR ANY REPRESENTATIVE OF VALUE; REQUIRING ALL STATE LOTTERY REVENUE, LESS EXPENSES AND PRIZES, TO BE PAID TO THE ARKANSAS EDUCATIONAL TRUST FUND; REQUIRING PAYMENT OF A 15% TAX ON THE NET GAMING REVENUE OF ANY CASINO, TO BE ALLOCATED AS FOLLOWS: 80% TO THE STATE'S GENERAL FUND FOR THE PURPOSE OF REDUCING OR ELIMINATING THE GROSS RECEIPTS TAX ON FOOD PURCHASED IN A RETAIL FOOD STORE, 10% TO THE ARKANSAS EDUCATIONAL TRUST FUND; 5% OF THE TAX OF ONE CASINO TO THE COUNTY IN WHICH THAT CASINO IS LOCATED AND IF THE CASINO IS IN A CITY LIMITS THEN THIS REVENUE SHALL BE DIVIDED EQUALLY BETWEEN THE COUNTY AND THE CITY, 1% TO THE ARKANSAS COMPULSIVE GAMBLING FOUNDATION FOR THE TREATMENT, PUBLIC AWARENESS, TRAINING, RESEARCH AND PREVENTION OF GAMBLING ADDITION; 4% TO THE STATE'S GENERAL FUND FOR THE OPERATIONAL COSTS OF THE ARKANSAS GAMING COMMISSION; PROHIBITING OTHER TAXES OR FEES ON ITS FURNITURE, FIXTURES, EQUIPMENT, PROPERTY, BUSINESS OPERATIONS, GROSS REVENUES, NET GAMING REVENUES OR INCOME DERIVED FROM, OR USED IN, CASINO GAMING: ESTABLISHING THE ARKANSAS EDUCATIONAL TRUST FUND TO PROVIDE GRANTS TO QUALIFIED HIGH SCHOOL GRADUATES FOR POST-SECONDARY EDUCATION; REQUIRING THAT GRANT RECIPIENTS MAINTAIN A "B" GRADE AVERAGE, AS DEFINED BY THE ARKANSAS DEPARTMENT OF HIGHER EDUCATION; DEFINING POST-SECONDARY EDUCATION AS THE PURSUIT OF AN UNDERGRADUATE DEGREE AT A PUBLIC OR PRIVATE UNIVERSITY, COLLEGE, COMMUNITY COLLEGE OR VOCATIONAL-TECHNICAL SCHOOL LOCATED IN ARKANSAS, PRE-KINDERGARTEN EDUCATIONAL PROGRAMS, TUTORIAL PROGRAMS FOR PRIMARY AND SECONDARY STUDENTS; CREATING THE ARKANSAS GAMING COMMISSION, WHOSE MEMBERS SHALL BE APPOINTED BY THE GOVERNOR WITH THE ADVICE AND CONSENT OF THE SENATE, WHO SHALL ESTABLISH AND OPERATE THE STATE LOTTERY, SHALL LICENSE AND REGULATE CHARITABLE BINGO AND RAFFLES, AND SHALL AUDIT THE OPERATIONS OF THE CASINOS TO INSURE THAT ALL CASINO TAXES DUE TO THE STATE ARE PAID; PROVIDING FOR JUDICIAL REVIEW OF COMMISSION'S DECISIONS OR ACTIONS; ALLOWING A CASINO TO OPERATE ANY DAY FOR ANY PORTION OF THE DAY; ALLOWING THE SERVING OF ALCOHOLIC BEVERAGES IN CASINOS DURING ALL HOURS THEY OPERATE; PROHIBITING CASINO GAMING EXCEPT FOR AUTHORIZED LOCATIONS OPERATED BY ARKANSAS CASINO CORPORATION; PERMITTING THE SHIPMENT OF GAMBLING DEVICES; RENDERING THE PROVISIONS OF THE AMENDMENT SEVERABLE; DECLARING INAPPLICABLE ALL CONSTITUTIONAL PROVISIONS AND LAWS TO THE EXTENT THEY CONFLICT WITH THE AMENDMENT; AND DECLARING THE AMENDMENT OPERATIVE UPON PASSAGE.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to approve and certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, I find that your popular name should be approved as submitted. It is my conclusion, however, that I must reject your proposed ballot title due to an unresolved ambiguity in the text of your proposed measure. There are a number of additions or changes to your ballot title that in my view are necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a ballot title without the resolution of the noted ambiguity. I am therefore unable to substitute and certify a more suitable and correct ballot title under A.C.A. § 7-9-107(b).
The ambiguity involves the power of the General Assembly to pass laws regulating the operations of the casinos authorized by your proposed amendment. The text of your proposed measure requires the General Assembly to enact legislation so that the proposed state lottery and charitable bingo games and raffles may begin at the earliest possible time. (Proposed Amendment, § 14.) It is silent as to the General Assembly's power to enact legislation concerning the casinos. It is clear to me, from reading other portions of your proposed amendment, that the regulatory authority of the proposed "Arkansas Gaming Commission" over the casinos will be limited to the "audit" of casino operations for the sole purpose of determining whether casino taxes have been paid. (Proposed Amendment, § 9(A)). The proposed amendment is silent, however, as to the legislative or regulatory power of the General Assembly over the casinos.
One possible interpretation of your amendment would be to equate this silence with a denial of authority to the General Assembly to regulate in the area. It is generally held, however, as a canon of state constitutional construction, that a state constitution is not a grant of enumerated powers to a state general assembly, but is rather a limitation on the power of a general assembly to act. See, e.g., Wells v. Purcell,267 Ark. 456, 592 S.W.2d 100 (1979); Jones v. Mears, 256 Ark. 825,510 S.W.2d 857 (1974); and Berry v. Gordon, 237 Ark. 547, 376 S.W.2d 279
(1964). That is, the legislature has absolute power to legislate in all fields unless it is expressly or by necessary implication denied that power by the Constitution. Id.
A question therefore arises as to whether your proposed amendment by "necessary implication" denies the General Assembly the power to pass any laws pertaining to the proposed casinos. If it does, this important fact must be reflected in the ballot title for your measure. Cf. Finn v.McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990) (where proposed amendment authorizing a lottery and bingo was silent as to checks and balances of other branches of government, and Supreme Court interpreted proposed amendment as prohibiting such checks and balances, that fact must be disclosed in ballot title). I cannot determine definitively, however, whether your proposed amendment, by necessary implication, denies legislative power to the General Assembly with regard to casinos. As a consequence, it is impossible for me to summarize this point fairly in a ballot title for the measure.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguity.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the issue discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
MP/cyh